UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| My Pillow, Inc.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ACI International,<br><br>　　　　Defendant. | CASE NO. _____<br><br>**COMPLAINT**<br>(Jury trial Demanded) |

Plaintiff My Pillow, Inc. ("My Pillow" or "Plaintiff") for its Complaint against Defendant ACI International ("ACI" or "Defendant")(and collectively the "Parties"), states and alleges as follows:

### INTRODUCTION

My Pillow purchased slippers from Defendant for a number of years. On January 21, 2026, My Pillow learned that Defendant had put a levy on My Pillow's Amazon account. That same day, January 21, 2026, the Parties reached a contract regarding that levy. Defendant agreed via email to lift the levy on January 21, 2026 in return for My Pillow's production (on January 21, 2026), of certain pleadings (which had been filed under seal), other confidential documents, and a written security agreement which included specific terms provided by Defendant. My Pillow complied on January 21, 2026, with all of the conditions required by Defendant. The Parties thus entered into an enforceable contract.

Defendant, however, breached the Parties' contract by failing to remove the levy on January 21, 2026. My Pillow thus brings this action to enforce the Parties' contract.

## PARTIES

1. My Pillow is a Minnesota corporation with its principal place of business in Minnesota. My Pillow is in the business of selling pillows, sheets, and in the past, slippers

2. Defendant is a California corporation which has been doing business in Minnesota for a number of years via its sale of its slippers to My Pillow.

## VENUE AND JURISDICTION

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

4. This Court has personal jurisdiction over Defendant because, inter alia, Defendant continuously conducted business in Minnesota for a number of years by selling slippers to My Pillow in Minnesota, by shipping slippers directly into Minnesota, entering into many sales transactions (sometimes as frequently as fifteen times per month) with My Pillow in Minnesota, by sending an email into Minnesota to form the contract at issue, and by entering into the contract at issue with My Pillow, a Minnesota corporation. This lawsuit arises from Defendant's specific contacts with Minnesota, and thus Defendant purposefully availed itself of Minnesota laws and should reasonably anticipate being sued in Minnesota.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

## BACKGROUND

6. In approximately 2019, Defendant began selling slippers to My Pillow in Minnesota. After a short time, Defendant began shipping those slippers directly to My Pillow in Minnesota.

7. For years, My Pillow timely paid the amount due on invoices with Defendant for the purchase of Defendant's products for resale by My Pillow.

8. Beginning in 2022, My Pillow began suffering a number of substantial financial blows including, without limitation, being debanked by two of its banks, being cut off from text marketing by Verizon, being dropped as a vendor by Walmart, having its credit line significantly cut by American Express, and losing Fox News as an advertising outlet after Fox News decreased the number of weeks allowed for My Pillow's payment of advertising costs.

9. It is only recently that My Pillow learned that it had been a target of Arctic Frost, the name that has been given to a joint federal investigation into certain alleged efforts to overturn the 2020 United States presidential election that had been commenced in the spring of 2022 and involved a number of federal agencies, including, without limitation, the FBI and the DOJ.

10. My Pillow has become aware, for example, that it was the only company targeted by Arctic Frost, that its banks had been subpoenaed, and that some of its vendors and at least one of its banks had been threatened to stop doing business with My Pillow.

The actions taken against My Pillow in the name of Arctic Frost were improper, unwarranted, and legally actionable.

11. As a result of the foregoing and other financial reversals caused by the misconduct of federal agencies in the name of Arctic Frost, My Pillow began to fall behind on its payments to Defendant.

12. Defendant nevertheless continued to sell its products to My Pillow.

13. On January 21, 2026, My Pillow became aware that Defendant had put a levy on My Pillow's Amazon account.

14. Defendant does not have priority over the funds in My Pillow's Amazon account but nonetheless put a levy on that account.

15. My Pillow's CEO, Michael J. Lindell ("Lindell") and representatives for Defendant, including Defendant's President and one of its Executive Vice Presidents, had an hour long conference call the morning of that same day, January 21, 2026, about the removal of Defendant's levy.

16. During this call, Lindell informed Defendant that if it did not lift the levy, My Pillow could go out of business. Lindell also informed Defendant that Defendant did not have priority over the funds in My Pillow's Amazon account.

17. Defendant's President stated that they would discuss the removal of Defendant's levy and get back to My Pillow.

18. At 1:47 p.m. Central time, Defendant's President sent Lindell (and others) an email which provided that:

4

**From:** Craig Hardy <chardy@aciint.com>
**Date:** January 21, 2026 at 1:27:38 PM CST
**To:** Mike Lindell <mike@mypillow.com>, Ali Warden <ali@mypillow.com>
**Cc:** Steven Jackson <sjackson@aciint.com>, Anna Liau <aliau@aciint.com>
**Subject: statements**

> **Caution:** This email originated outside of the company. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mike, we can lift the levy on Amazon today but we would request the following documents get sent to us today as well.

1- Last 6 months of bank statements

2- The federal filings discussed this morning on the call that showed to the federal court the financials of and yourself.

3- As discussed, a security agreement that if there is a settlement with the government in the Arctic Frost filings (SF-95) and Mypillow received $50million or more that ACI would be paid in full the outstanding debt of $15million. Anything under $50million would be prorated to our debt.

Thanks Craig

      19.      My Pillow, in reliance on and in acceptance of Defendant's offer as set forth above, provided Defendant that same day with all of the items on the list in Defendant's email, including the last six months of My Pillow's bank statements, the sealed federal filings requested (which showed financials for both My Pillow and Lindell), as well as an executed Security Agreement which included all of the terms set forth by Defendant's president in his email quoted above.

      20.      The bank statements and sealed federal filings include highly confidential information voluntarily produced by My Pillow in reliance on Defendant's written offer.

      21.      Defendant breached the Parties' contract by failing to lift the levy on My Pillow's Amazon account on January 21, 2026.

## COUNT I
**(Declaratory Judgment that the Parties Have an Enforceable Contract)**

22. Plaintiff restates and realleges all of the paragraphs in this Complaint as though fully set forth herein.

23. As set forth above, Defendant made a specific written offer to lift the levy on My Pillow's Amazon account.

24. As further set forth above, My Pillow accepted Defendant's written offer by performing in accordance with all of the terms of Defendant's offer, specifically, by meeting all of the conditions set forth in Defendant's written offer.

25. As a result of Defendant's written offer and My Pillow's acceptance of that offer via My Pillow's performance, the Parties reached a meeting of the minds and formed an enforceable contract that is supported by consideration via Defendant's agreement to lift its levy in return for My Pillow's production of highly confidential documents and filings as well as an executed Security Agreement which includes all of the terms required by Defendant.

26. My Pillow thus seeks a declaration that the Parties' contract is valid and enforceable and that Defendant must lift the levy on My Pillow's Amazon account.

## COUNT II
**(Breach of Contract)**

27. Plaintiff restates and realleges all of the paragraphs in this Complaint as though fully set forth herein.

28. There is a valid and enforceable contract between My Pillow and Defendant.

29. Defendant has breached the Parties' contract by failing to lift the levy on My Pillow's Amazon account on January 21, 2026.

30. Defendant's breach of the Parties' contract has damaged My Pillow, including, inter alia, by causing the loss of the funds in My Pillow's Amazon account, which in turn could force My Pillow out of business as well as causing My Pillow to default on contracts it has with other entities.

31. As a result, My Pillow has sustained damages in excess of $75,000.00, in an amount to be proven at trial, plus its costs, expenses, and attorneys' fees.

## COUNT III
### (Breach of Contract Seeking Specific Performance)

32. Plaintiff restates and realleges all of the paragraphs in this Complaint as though fully s

33. There is a valid and enforceable contract between My Pillow and Defendant.

34. Defendant has breached the Parties' contract by, inter alia, failing to lift the levy on My Pillow's Amazon account on January 21, 2026.

35. In the alternative, My Pillow has a right to specific performance under the Parties' contract requiring Defendant to lift the levy on My Pillow's Amazon account.

36. My Pillow is entitled to specific performance under the Parties' contract because, inter alia, My Pillow acted in good faith when meeting all of the conditions set forth in Defendant's written offer, My Pillow reasonably relied on Defendant's written offer, and My Pillow will be irreparably injured because My Pillow will be forced out of

business and into default of other contracts and its employees (who are part owners of My Pillow), will lose their jobs at My Pillow as result of Defendant's failure to lift its levy on My Pillow's Amazon account.

**WHEREAS**, My Pillow prays for judgment on its claims as follows:

A.  **Entering a Declaration** confirming that: (1) there is an enforceable contract between My Pillow and Defendant; and (2) Defendant is required to lift the levy on My Pillow's Amazon account;

B.  Entering judgment in favor of My Pillow on its breach of contract claim;

C.  In the alternative, entering judgment in favor of My Pillow on its breach of contract claim for specific performance and ordering Defendant to lift the levy on My Pillow's Amazon account;

D.  Awarding to My Pillow its costs, expenses, and attorneys' fees; and

E.  Awarding My Pillow such other relief as the Court deems just, proper, and equitable.

Dated: January 22, 2026                **BERENS & MILLER, P.A.**

s/*Barbara Podlucky Berens*
Barbara Podlucky Berens (#209788)
80 South 8th Street
3720 IDS Center
Minneapolis, MN 55402
(612) 349-6171
bberens@berensmiller.com

***Attorneys for Plaintiff My Pillow, Inc.***