**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| My Pillow, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>ACI International,<br><br>Defendant. | Case File No. 26-cv-570 (LMP/DLM)<br><br>**DECLARATION OF CRAIG HARDY IN SUPPORT OF DEFENDANT ACI INTERNATIONAL'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |

---

Pursuant to 28 U.S.C. § 1746, Craig Hardy declares as follows:

1. At all relevant times I have been the President of Defendant ACI International ("ACI"). I have personal knowledge of the facts stated in this declaration, except where stated on information and belief, and if called as a witness I could and would testify competently to them. I submit this declaration in support of ACI's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue.

2. I am one of the custodians of ACI's books, records, and files relating to My Pillow, Inc. ("My Pillow"). Those records are made at or near the time of the acts, conditions, or events they record, by persons with knowledge of those matters, and are kept in the ordinary course of ACI's regularly conducted business activity. I have reviewed those records in connection with this declaration.

**A. ACI and Its Absence of Connection to Minnesota.**

3. ACI is a corporation organized under the laws of the State of California. Its principal place of business is, and at all relevant times has been, 844 Moraga Drive, Los

Angeles, California 90049. ACI manufactures and distributes footwear.

4. ACI has never been incorporated or organized in Minnesota, and has never maintained its principal place of business in Minnesota.

5. ACI has never appointed an agent for service of process in Minnesota.

6. ACI has never owned, leased, or occupied any office, plant, warehouse, showroom, or other physical facility in Minnesota.

7. ACI has never had any officer or director located in or residing in Minnesota.

8. ACI has never maintained a bank account in Minnesota.

9. ACI has never owned real or personal property located in Minnesota.

10. ACI has never directed advertising or marketing at Minnesota residents.

11. With respect to ACI's sales of footwear to My Pillow, all goods were manufactured outside Minnesota.

12. Every email described below that I sent, and every telephone call described below in which I participated, I sent or participated in from California. I have never traveled to Minnesota in connection with the subject matter of this lawsuit.

**B. The Underlying Debt.**

13. Beginning in approximately 2020, My Pillow submitted written purchase orders to ACI for large quantities of footwear, including men's and women's slippers in various styles, sizes, and colors. ACI manufactured and delivered the goods My Pillow ordered. Over time, My Pillow purchased millions of dollars' worth of goods from ACI.

14. Beginning in 2023, My Pillow failed to pay for certain of the goods it had ordered and received.

15. From 2022 through August 2025, ACI demanded payment more than fifty times.

16. I have communicated with Michael Lindell of My Pillow many times regarding the unpaid balance. In those communications Mr. Lindell has not disputed that My Pillow owes the money. He has repeatedly acknowledged the debt and stated that My Pillow has not paid it because My Pillow is financially unable to do so.

17. On December 23, 2025, the Superior Court of California, County of Los Angeles, entered judgment in favor of ACI and against My Pillow in the amount of $15,408,008.84 (the "California Judgment"). My Pillow has not appealed the California Judgment and has not paid it.

**C. The Morning of January 21, 2026.**

18. On the morning of January 21, 2026, I participated in a telephone call with Mr. Lindell and ACI's Chairman and Chief Executive Officer, Steven Jackson. The call lasted approximately one hour. I participated in it from California.

19. During that call Mr. Lindell asked ACI to lift the levy that had been served on My Pillow's Amazon account (the "Amazon Levy") and said that My Pillow could go out of business if ACI did not.

**D. The Subject Email.**

20. At 1:27 p.m. Central time on January 21, 2026, I sent Mr. Lindell and Ali Warden of My Pillow an email with the subject line "statements" (the "Subject Email"). A true and correct copy of the Subject Email is attached as Exhibit 10 to the Declaration of Michael Wallin. The Subject Email read in full:

> Mike, we can lift the levy on Amazon today but we would request the following documents get sent to us today as well.
> 1- Last 6 months of bank statements
> 2- The federal filings discussed this morning on the call that showed to the federal court the financials of MyPillow and yourself.
> 3- As discussed, a security agreement that if there is a settlement with the government in the Arctic Frost filings (SF-95) and Mypillow received \$50million or more that ACI would be paid in full the outstanding debt of \$15million. Anything under \$50million would be prorated to our debt.
> Thanks Craig

21. I sent the Subject Email from California.

22. I did not intend the Subject Email to be a binding contract, and I did not understand it to be one. I understood that ACI would not be obligated to forbear from enforcing its judgment unless and until a written agreement was signed by both ACI and My Pillow.

23. My purpose in sending the Subject Email was to ask Mr. Lindell to send documents so that ACI and its counsel could evaluate whether ACI would agree to forbear from enforcing the California Judgment, and on what terms.

24. Discussions about the terms of a possible forbearance continued through January 21 and January 22, 2026 among Mr. Lindell, Mr. Jackson, ACI's General Counsel and Executive Vice President, Anna Liau, ACI's outside counsel, and My Pillow's outside counsel.

25. I did not draft, provide a form for, review, or approve the document My Pillow sent to ACI on the evening of January 21, 2026, a true and correct copy of which is attached as Exhibit 14 to the Declaration of Michael Wallin.

26. ACI did not sign Exhibit 14. I did not sign it, I did not authorize anyone to

sign it on ACI's behalf, and I am not aware of anyone at ACI having signed it or having been authorized to do so.

**E. January 22, 2026 and the Filing of This Action.**

27. On the morning of January 22, 2026, I asked ACI's counsel, Mr. Jackson, and Ms. Liau: "Did we lift the levy on Amazon?" Ms. Liau replied: "Not yet. We need to draft agreement for them to countersign. Their agreement was insufficient." A true and correct copy of that exchange is attached as Exhibit 15 to the Declaration of Michael Wallin. I understood from that exchange that the Amazon Levy had not been released and that ACI's counsel was preparing documents for the parties to review and potentially sign.

28. ACI never released the Amazon Levy on January 21 or January 22, 2026.

29. On the evening of January 22, 2026, Mr. Lindell emailed me a copy of the Complaint in this action. I forwarded that email to ACI's counsel. A true and correct copy is attached as Exhibit 21 to the Declaration of Michael Wallin.

30. Before receiving that email, no one at My Pillow told me that My Pillow considered the Subject Email to be a binding contract, that My Pillow considered ACI to be in breach of any agreement, or that My Pillow intended to sue ACI.

31. ACI never agreed to release the Amazon Levy, to forbear from enforcing the California Judgment, or to refrain from levying on My Pillow's assets, on the terms stated in the Subject Email or on any other terms.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 31, 2026 at Los Angeles, California.

CRAIG HARDY