**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

My Pillow, Inc.,

Plaintiff,

v.

ACI International,

Defendant.

Case File No. 26-cv-570 (LMP/DLM)

**DECLARATION OF ANNA LIAU IN SUPPORT OF DEFENDANT ACI INTERNATIONAL'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Pursuant to 28 U.S.C. § 1746, Anna Liau declares as follows:

1. At all relevant times I have been the General Counsel and Executive Vice President of Defendant ACI International ("ACI"). I have personal knowledge of the facts stated in this declaration, except where stated on information and belief, and if called as a witness I could and would testify competently to them. I submit this declaration in support of ACI's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue.

2. I participated in ACI's communications with My Pillow, Inc. ("My Pillow") and its counsel on January 21 and January 22, 2026. I participated in all of those communications from California. I have never traveled to Minnesota in connection with the subject matter of this lawsuit.

3. I have reviewed ACI's records relating to those communications. Those records are made at or near the time of the acts, conditions, or events they record, by persons with knowledge of those matters, and are kept in the ordinary course of ACI's regularly conducted business activity.

4. On December 23, 2025, the Superior Court of California, County of Los Angeles, entered judgment in favor of ACI and against My Pillow in the amount of $15,408,008.84 (the "California Judgment"). My Pillow has not appealed the California Judgment and has not paid it.

**A. January 21, 2026**

5. On January 21, 2026, ACI's president Craig Hardy sent Michael Lindell and Ali Warden of My Pillow an email with the subject line "statements" (the "Subject Email"). I was copied on the Subject Email. A copy is attached as Exhibit 10 to the Declaration of Michael Wallin.

6. Shortly after the Subject Email was sent, My Pillow's counsel, Barbara Berens, emailed Mr. Hardy, ACI's Chairman and Chief Executive Officer, Steven Jackson, and me. In her first email she wrote that she would send the requested documents and asked: "Anna, do you have a form agreement you would like us to use for the security agreement?" In a second email she wrote: "I am working on the last piece, the agreement, but need to know how much you folks are owed." Ex. 10.

7. ACI did not have a form security agreement to give Ms. Berens, and ACI had not agreed with My Pillow on the terms of any security agreement. I replied to Ms. Berens and copied ACI's counsel: "All of this needs to be run by our attorney, Michael Wallin, so please reach out to him to discuss." Ex. 10.

8. When I sent that reply, I did not understand ACI to have entered into a binding agreement with My Pillow, and I did not understand ACI to be obligated to release the levy that had been served on My Pillow's Amazon account (the "Amazon Levy"). I understood that the parties were discussing terms and that ACI's counsel would prepare documents for the parties to sign.

9. On January 21, 2026, ACI received six monthly bank statements from My Pillow. Each was for a single account at Bank Michigan ending in 6968. ACI did not receive statements for the other deposit accounts identified on the balance sheet My Pillow had provided to ACI. I raised that shortfall within ACI on the evening of January 21, 2026.

10. At 7:27 p.m. Central time on January 21, 2026, Ms. Warden emailed ACI's counsel, Mr. Hardy, Mr. Jackson, and me, copying Mr. Lindell, stating: "Please see the attached signed agreement." Attached to that email was the document attached as Exhibit 14 to the Declaration of Michael Wallin. Copies of the email and the document are attached as Exhibits 13 and 14 to the Declaration of Michael Wallin.

11. ACI did not draft Exhibit 14, did not provide a form for it, and did not review it before Ms. Warden sent it.

12. ACI did not sign Exhibit 14. I did not sign it, I did not authorize anyone to sign it on ACI's behalf, and I am not aware of anyone at ACI having signed it or having been authorized to do so. The signature block for ACI in Exhibit 14 remains blank.

**B. January 22, 2026**

13. On the morning of January 22, 2026, Mr. Hardy asked ACI's counsel, Mr. Jackson, and me: "Did we lift the levy on Amazon?" At 9:33 a.m. Pacific time I replied: "Not yet. We need to draft agreement for them to countersign. Their agreement was insufficient." A true and correct copy of that exchange is attached as Exhibit 15 to the Declaration of Michael Wallin. When I sent that reply, ACI had not released the Amazon Levy and had not agreed to release it, and ACI's counsel was preparing the documents ACI would require before it would agree to forbear from enforcing the California Judgment.

14. At 11:01 a.m. Pacific time on January 22, 2026, Ms. Berens emailed me: "Anna, just following up to see if the levy has been lifted. Thanks so much, Barbara." A copy is attached as Exhibit 18 to the Declaration of Michael Wallin.

15. At 11:31 a.m. Pacific time, I replied to Ms. Berens and copied ACI's counsel: "Hi Barbara, Mike Wallin is working on finalizing the documents needed. He will be forwarding the documents to you shortly. Anna." Ex. 18.

16. I sent that reply because, as of that time, ACI had not agreed to release the Amazon Levy, and ACI's counsel was preparing the documents ACI would require before it would agree to forbear from enforcing the California Judgment.

17. Ms. Berens did not respond to my reply by stating that the parties had already reached a binding agreement, that no further documents were required, or that ACI was already obligated to release the Amazon Levy.

18. Later on January 22, 2026, ACI's counsel sent Ms. Berens three documents — a Forbearance Agreement, a Security Agreement, and a Joint Irrevocable Instruction to Amazon — and I was copied on that email. A copy is attached as Exhibit 19 to the Declaration of Michael Wallin. Each of those documents contained unexecuted signature blocks for both ACI and My Pillow.

19. The documents described in the preceding paragraph reflected the terms on which ACI was willing to forbear from enforcing the California Judgment. ACI would not have agreed to forbear on terms other than those set out in a written agreement signed by both parties.

20. Ms. Berens replied to that email: "Thank you." A copy is attached as Exhibit 20 to the Declaration of Michael Wallin. She did not state that the documents were unnecessary, that a binding agreement already existed, or that ACI's stated conditions were inconsistent with any agreement the parties had reached.

21. ACI never released the Amazon Levy, and ACI never signed any agreement to release it, to forbear from enforcing the California Judgment, or to refrain from levying on My Pillow's assets.

**C. ACI's Absence of Connection to Minnesota**

22. ACI is a California corporation with its principal place of business in Los Angeles, California.

23. ACI has no office, bank account, or property in Minnesota, has no officer or director located in or residing in Minnesota, and does not direct advertising or marketing at Minnesota residents.

24. All of ACI's communications with My Pillow and its counsel described in this declaration were sent and received by ACI personnel located in California.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 31, 2026 at Los Angeles, California.

ANNA LIAU